[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff (husband) commenced this action for the dissolution of his marriage from the defendant (wife) in a complaint returnable on September 24, 1996. The parties were married on June 6, 1987 in Georgetown, Connecticut, and no children were born from this marriage. Both parties were represented by capable counsel, and they testified at the trial. They both have resided in this state for more than one year prior to the filing of the complaint; therefore, this court has jurisdiction.
There was contradicting testimony as to who was at fault for the breakdown of the marriage. The husband testified they ceased to have sexual relations and slept in separate bedrooms for four years prior to filing this action. The wife testified that the husband has been living with his girlfriend for the past eighteen months causing the marital breakdown. She also testified they ceased to communicate with each other for over four years before they separated. From their testimony, the court finds the marriage has broken down irretrievably with no hope for reconciliation, and finds that neither party is at fault. Therefore, a decree of dissolution is granted pursuant to § 46b-40 (c)(1) of the Connecticut General Statutes.
Some of the background facts are not in dispute. This was an eleven year marriage. The parties lived together for about nine and one-half (9 1/2) years. They are both thirty-seven years old and in good health and are able to work. The wife has worked for five or six employers for hourly wages from $8 to $10 an hour, first as a nanny taking care of children, and later she attended school and acquired computer and secretarial skills. She has held various secretarial jobs, and in the last one she earned a net salary of $327.68 a month with AWD, a refuse company. This company had advertised to replace her, and two weeks prior to this trial, she voluntarily left this employer. As a temporary employee, she was never covered by health insurance or retirement CT Page 11422 benefits.
The husband is the sole owner of Country Refuse which has grown over the years. His gross annual earnings from this company have increased from about $30,000 two years ago to $85,000 at the present time. He also is an equal 50 percent partner in D D Sanitation, but, to date, he has received no income from that company.
His sworn financial affidavits listed his total cash value of all assets as minus $34,278, which is misleading. He testified that a formula is used in the refuse business to determine market value, and conceded the gross market value of Country Refuse is $216,000. The debts and liabilities are $25,092. The court finds the net cash value of his business is $190,908.
The defendant valued D D Sanitation at $607,200, which makes his 50 percent share worth $303,600. He then deducted 100 percent of the debts and liabilities of $603,495 instead of $301,748, since he owns only 50 percent of this business, leaving $1852 as a net worth of his one-half share. The court rejects his computation of deducting 100 percent of the debt from his 50 percent ownership in D : D Sanitation.
The court finds the plaintiff's net assets at the present time to be $253,103, as follows:
1. Country Refuse $190,908
2. D D Sanitation 1,852
3. Marital Home Half Interest 21,088
4. Land (Newfane, VT) 20,000
5. Checking Account 646
6. Stocks 6,721
7. Insurance (cash value) 5,944
 8. IRA 5,944 -------- $253,103 CT Page 11423
The value of assets must be what they are worth at the present time. Sunbury v. Sunbury, 216 Conn. 673 (1988).
His current gross weekly earnings from Country Refuse are shown on his financial affidavit to be $1673, minus deductions, for a net weekly wage of $933 with weekly expenses of $1346, a shortfall of $413 a week. In his testimony, he admitted contributing $2000 a month for his girlfriend's household and, in addition, paid for some groceries. During the past eighteen months, he has paid $1272 a month for mortgage, taxes and insurance on the marital home where his wife has been living.
The wife was unemployed at the time of trial and listed no earnings on her financial affidavit. During the marriage, she first worked as a nanny caring for children and later was employed as a temporary secretary-clerk earning between $8 to $10 an hour. She left high school in the 11th grade, and to her credit went back to school to learn secretarial skills. On cross-examination, she admitted leaving her job at AWD Refuse two weeks before this trial, where her net weekly wage was $327. She has gone to job interviews seeking employment as a secretary-clerk and expects to find such a job in the near future. For the prior eleven weeks, her average weekly earnings from AWD was $325 a week. From her own testimony, the court finds she has an earning capacity of $325 per week.
On her financial affidavit, the wife listed her living expenses at $207 per week. The monthly mortgage, taxes, and insurance at the marital home at 4 Thomas Street in Danbury are $1272 a month, and were not listed as living expenses because the husband has been paying them for the past eighteen months. Her total assets are $29,285, of which $20,000 is her equity in the marital home. She lists no stocks or bonds, no retirement accounts, no life or health insurance, with only $935 in checking and savings accounts.
After the husband left, the wife's sister and nephew lived in the marital home and paid no rent. The wife admitted she contributed about $75 to pay for groceries and other personal expenses. The court finds her contributions were not earned income to the wife and were to pay for their own living expenses.
Her potential for acquiring capital assets and income in the future are limited as a secretary-clerk. She could not stay in the marital home without the husband paying the $1272 for CT Page 11424 mortgage, taxes and insurance.
The court has considered all of the criterial of § 46b-81, 46b-82 and 46b-62 of the General Statutes, together with all of the evidence and case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account"; Scherr v. Scherr, 183 Conn. 366,368; this court will issue the following orders:
1. The husband shall quit to the wife his one-half interest in the marital residence at 4 Thomas Street in Danbury.
The court was unpersuaded and rejects the husband's claim for relief that the wife be ordered to pay for the mortgage, taxes, and insurance of $1272 to maintain the marital residence. The court also rejects the husband's claim for relief that the wife remove his name from the mortgage (having a balance of approximately $102,823) or if unable to do so in one year, order her to sell it. When and if she decides to sell the residence, all of the net proceeds of sale shall belong to the wife.
2. The husband shall pay to the wife periodic alimony of $1300 a month for the next forty-eight months until the death of either party, the wife's remarriage, or her statutory cohabitation. The amount and term of the alimony shall be non-modifiable.
During this forty-eight month period, the wife should be able to improve her secretarial and computer skills to increase her earnings and to enable her to support herself. Ippolito v.Ippolito, 28 Conn. App. 745 (1992).
3. The husband's real property in Newfane, Vermont, shall remain solely his property.
4. The furniture and furnishings now in the marital home shall belong to the wife, except for those items otherwise agreed to that belong to the husband.
5. The parties shall retain the bank accounts as listed on their respective financial affidavits, and the husband shall retain his IRA account of $5944.
6. The husband shall name the wife as primary beneficiary on CT Page 11425 the $100,000 life insurance policy with Phoenix, as listed on his financial affidavit, until his alimony obligation ceases.
7. The husband shall obtain a health insurance policy to benefit the wife for one year.
8. The husband shall contribute the sum of $3000 towards her attorney's fees, which are presently $17,000 earned over the past two years. The court finds her legal fees were reasonable for the time and efforts required to defend this action. The court has considered that the wife has used the husband's credit card to pay the $4000 retainer. The court has considered all the criteria in Connecticut General Statutes § 46b-62 in determining his contribution for the wife's attorney's fees.
9. Each party shall be responsible for the debts shown on their respective financial affidavits.
10. The husband shall retain his entire interests in the two refuse businesses: Country Refuse and D D Sanitation. He shall hold the wife harmless from any liability resulting from the ownership, operation or debts associated with these two businesses.
11. The parties shall retain their own motor vehicles as shown on their respective financial affidavits.
12. The wife shall retain the ownership of all furniture and furnishings in the marital home.
13. The parties shall equally divide the stocks and bonds listed on the husband's financial affidavit to be worth $6721.
Petroni, J.